Kind of strict on the time limits. Each side will be allowed 15 minutes. The appellant, reserved from that 15 minute portion, whatever time you find necessary for your rebuttal. When your case is called, would you please step up. Would the attorneys who are going to orally argue please step up to the podium and introduce yourselves initially. Clerk, please call our first case. 10-3055 Gilbert v. Levi Gilbert Attorney for the appellant. Good morning, your honors. My name is Heidi Lynn Lambros from the Office of the State Appellate Defender for appellant Levi Gilbert. Ms. Ambrose, good morning. My name is Bill Taffanetti. I'm an assistant state attorney for the people of the state of Illinois. Very well. Ms. Ambrose, you may proceed. Good morning, your honors. Levi Gilbert did not receive his Sixth Amendment right to effective assistance of counsel. Because at the time of his first degree murder trial, his attorney, William Brooks, was facing an inevitable suspension from the practice of law because of gross misconduct. And also because Attorney Brooks was suffering from irreversible dementia. A condition that the ARDC and the Illinois Supreme Court found rendered him unfit to practice law. Coupled with the numerous instances of counsel error at trial, Brooks' misconduct and significant mental impairment denied Levi Gilbert a fair trial. There's four arguments contained in the appellant's brief, and I would like to touch on the first three. But all of the arguments relate to the incompetence of Attorney Brooks. Firstly, Mr. Brooks was denied per se a violation of his Sixth Amendment right to counsel, where he was represented by an unqualified and a constructively unlicensed attorney at his trial. Can you cite a case for the proposition of constructively unlicensed? There is no case for the proposition of constructively unlicensed. There are a lot of cases holding the opposite, right? That when somebody has a pending ARDC complaint, they are treated as attorneys. There is absolutely a handful of cases. In fact, most recently, Domino, which says that if you are formally and technically unlicensed, that it renders per se ineffectiveness. This would be the first case to render. And again, it's not simply that he was unlicensed. It was that he was unlicensed. He was sent unlicensed. I'm sorry. In terms of the timing of this, it's not over until it's over. The Supreme Court did not act on this until approximately nine months or so after the ARDC suggested suspension. Yes, the hearing board. He still had his license. The hearing board made findings in 07, right before they went to trial. Made findings that, number one, he committed gross misconduct, and number two, he was unfit to practice law, and that the ARDC was not comfortable with him representing clients for the safety of the public, wanted him to basically be suspended. Now, Mr. Brooks, for lack of a better word, appealed that decision to the inquiry board, but he did not appeal the factual findings. He didn't dispute any of the findings of misconduct. He didn't say, I'm not mentally unfit or I'm not mentally ill. All he contested was his, for lack of a better word, sentence. Mr. Brooks went into the inquiry board findings saying, I should not be suspended. I would like probation. So, essentially, he admitted that he had committed these acts, these egregious acts of misconduct, as well as admitted that his mental state, he could not function as an attorney. All he wanted going forward to do was- What exists in the record to show that he had, that he was suffering from mental deficiencies at the time of his representation? Well, we can look- Because I've looked through the record and I can't find any. Well, this court can take judicial notice of the AODC findings, which are essentially law of the case, as the Illinois Supreme Court is solely responsible for determining the fitness of attorneys within this state. Those AODC findings that were pending were available at the motion to reconsider, at the motion for a new trial. And those AODC findings cannot be contested by this court or by the circuit court. They are findings of our Illinois Supreme Court of unfitness, which is why the Illinois Supreme Court has suspended him, and he continues to be suspended to this day. But there was a lot of, there was a lot of equivocation in the terms of people who were deciding what his mental condition really was. There's nothing definitive that gives a diagnosis according to the way we read the record, at least I read the record. Well, actually, the AODC found that he was suffering from vascular dementia, that it was irreversible. And it made that incompatible with the solo practice of law. The AODC found, and I quote, we would not feel comfortable returning Brooks to the practice of law without a convincing demonstration that his conditions have been successfully treated and his mental acuity is such that he can adhere to the rules of professional conduct. That's not a final decision as to what his medical condition is. If they're going to take a look back and see what he's done in terms of his progress, and it's physiological as well as neurological, the way that's described. Well, they did make a finding that he had vascular dementia, a finding that he didn't contest. And also, before the Inquiry Board, they found him. Yes, but there's no, when he went forward to the Inquiry Board, the Inquiry Board noted he'd done no treatment. That was one of the reasons why they were going to basically ratify the suspension procedures of the Hearing Board. They found him unfit to practice law. What's your strongest case? And since there are no cases for you directly, are there cases that support you indirectly, where we should go down this road and find that people who have AODC beef spending should not be allowed to practice law? I don't think it's merely AODC beef spending. I think it's AODC beefs where you are going to, this is tantamount to a suspension. The writing was on the wall for this man. He had been suspended previously. He wasn't contesting the AODC's findings that he should be suspended, only basically his sentence as you were, as well as coupled with the AODC finding him mentally unfit to practice law. But the question goes back to law. Case. Yes. Give me a case. I would say that Gamino kind of discusses about having an unqualified or unlicensed attorney. The Illinois Supreme Court has said you have to be qualified and licensed. I would contest that here, Mr. Brooks was unqualified because of his mental inability. And again, the AODC found that he was borderline impaired on attention and distraction. Do we apply Strickland? Do we not in these cases? Well, we would be arguing that a per se rule is necessary for the rarity of this type of case. That no case exists in Illinois is a benefit to all of us in the legal profession. That mentally ill people are not liable. The Dennis Williams case is very close, I think. You cited in your reply brief. I thought you said it just now. That's why I asked. Yes. Well, Williams tells us. Archie Weston is trying four people on a capital case, and all four clearly have prudent problems. He didn't seem to care about it. They got death. They didn't do it. They were innocent people. It came back, and then the Supreme Court, based on that, said, as you say, unique, which we hear every day. This is the most unique case on earth. I suggest it's not. Dennis Williams is pretty unique in that Archie Weston represented four people while undergoing horrible problems with the AODC, and none of those four had committed the crime, which cannot be said about Mr. Gilbert. Mr. Gilbert was caught inside during an armed robbery with the proceeds and the victims, was he not? Yes, he was. Okay. He was caught. We can win that case. Can we bring in Clarence Darrow? What could be said? What brilliant attorney could help Mr. Gilbert be caught inside with the victim and the proceeds of an armed robbery? An attorney who would have understood how to argue a compulsion defense. Okay. And how do you argue a compulsion defense in this case? Unarguably, when you're caught inside and identity is no longer an issue, you only have a couple of ways you can go. Number one is compulsion. And Mr. Gilbert maintained. Number one is plea. Number one is guilty plea. He did get the minimum. So, you know, obviously Justice Sloan, you know. He wanted to go to trial. He got his trial. He did want to go to trial on his compulsion defense. And his compulsion defense was that the shooting, his co-felon who was shot by the Chicago police, coerced him and forced him to commit this armed robbery. He went out the side door. He didn't go out the front door. The man with the gun at the door who was shot by the police was the only one bearing arms. And he, your client, was in the room binding these two other employees in the store. And then they departed out the side door. Where was the compulsion? They weren't even in the same room. And there was only one person with a gun. And he was out of it once the police took action. Exactly. Mr. Brooks didn't offer in advance any actual evidence of this defense. Although Mr. Brooks, in opening statements, he gets up there and he tells the jury, essentially, you're going to hear a story about compulsion. That the client Jones, the co-felon, put a gun to this client's head and said, you better do this, you better do this. Essentially also saying, guess who's going to take the stand and testify about what happened and how I felt. And then he proceeds to ask witnesses. What does the record reflect as to any discussion between the trial court and Mr. Gilbert when Gilbert refused to testify?  And I would say refuse to testify. No brief put it out. I don't know why both parties chose not to put it in the brief, but both parties chose to disregard that and thought it was fairly insignificant. What was said? It was said, are you voluntarily waiving your right to testify? And he said yes. But Mr. Gilbert also put in his post-trial motion that he wanted to testify, but that his counsel refused to do a Montgomery motion. And they had a hearing on it, did they not? They did have a hearing on it. And the defense attorney at the time, the trial lawyer, did testify at that hearing, did he not? Yes, Mr. Brooks did testify. But again, Justice Salone also found that his defense that Mr. Brooks had advanced was confounding, and he also found that there was significant trial error, but he found no prejudice. And I would argue that what was confronting Justice Salone at the time is that he's looking at a lawyer, again, and we tend to believe lawyers when they're testifying about trial strategy, and Mr. Brooks had said, well, the reason why I didn't offer any evidence of a defense was because the client told me not to. But he had multiple armed robbery convictions, did he not, Mr. Gilbert? He did. And so had he testified, would it be safe to assume that even in Judge Salone's courtroom, that the odds are that after he testified, yes, I was compelled to do it, I'm a, whatever else he'd say, God only knows, and that the armed robberies would be told, the juries would be told, oh, by the way, this isn't Mr. Gilbert's first rodeo, nor his first or second armed robbery. No. He's got these other armed robberies. Would that be bad? I think I could twist it, and I think I could say, if you're going to threaten someone to help you, wouldn't you want an armed robber to help you commit an armed robbery? Maybe he's too good of a lawyer and said, hey, I know this guy. He's at least going to know how. Would that result in a different verdict, which is your burden, is it not? I believe my verdict is not, no, not a different verdict. A reasonable probability. A reasonable probability of a different verdict. Or does this conviction worthy of confidence? Confidence. Are we sure he did it? Are we sure that he didn't have a defense? We cannot be sure that he did not have a defense, because this lawyer didn't offer it, didn't notice it up. Well, the second lawyer then. So now the trial court appoints a lawyer for Mr. Gilbert at the post-trial motions, and that lawyer, in terms of a compulsion defense, does not produce anybody regarding the compulsion other than Mr. Gilbert, right? Mr. Gilbert didn't testify, but yes. There you go. So not only, again, did Mr. Gilbert refuse to testify and say there was compulsion, the second time, but also the waitress who allegedly overheard these things was not brought in either. Now, should we wait for the post-conviction file to be told that the second lawyer on Krinkle was also incompetent for also not calling Mr. Gilbert and this waitress? Well, I would say that the post-trial motion counsel was also arguing for a per se rule as well, because I brought up the fact that he had gone through this pending suspension, so in their mind it was that we're going for a per se rule. But even when they're articulating Strickland, I mean, what Mr. Brooks says is, yeah, I know about witnesses and I knew about the defense, I just didn't think that I had to offer any evidence of this defense. I was listening, and again, it makes absolutely no sense that your client wants you to advance a compulsion defense that you don't notice up to the state, that you don't request jury instructions for, and then you make this bizarre convoluted argument in closing statements about sugar barrels and how your client was compelled because he wore a mask. I mean, honestly, this was a defense. I mean, it was a very clever story, and I did enjoy it. I didn't understand what it had to do with Mr. Gilbert, whether or not evidence was offered. And Mr. Gilbert says that a defense could have been offered to his benefit. Are we confident that this mentally ill man, again, let's understand what we're dealing with here. The Air D.C. found that 95 percent of the population scored better on him in organization, strategizing, and problem solving, that he was impaired in attention and distraction, that he had problems putting things together conceptually, which is apparent because he could not conceptualize what a compulsion defense was for Mr. Gilbert. He also called witnesses, did he not? Pardon me? He actually called witnesses, which is pretty rare. He called two totally irrelevant witnesses that added nothing other than the police who were at the side door who said they did not hear the policeman at the front door drop the gun. Say he dropped the gun and said they just assassinated him. That didn't, that wasn't good. That was bad voicing. They didn't say assassinate. I mean, there was a gun found by Mr. Jones, a gun that the Chicago police officer said, even as a defense attorney, I do believe Chicago police officers, and when you have a whole cadre of them surrounding and swarming this place, and Mr. Jones comes out, I don't believe they assassinated him. That was actually a poor defense. That was the argument of Mr. Brooks. Mr. Brooks argued that the guy didn't have a gun. Nobody had a gun. Which would have been totally irrelevant. He shot his buddy. It was a robbery, not an armed robbery, which makes sense, doesn't it? So you're doomed. You're caught inside the proceeds, caught inside the victims. The argument is it's a robbery, not an armed robbery, and that will lessen your possibility, although knowing your guy's background, maybe it wouldn't have, to something substantial. It's not going to lessen it at all, because robbery is an underlying felony. A felony murder, it's irrelevant whether he had a gun or he walked outside and said, here's my finger, I'm going to bang, bang, bang. He's on the hook for that death. That's it. What else could he have argued? He could have argued a compulsion defense. He could have maybe had the waitress come in. He could have testified. Maybe his prior convictions would have come in, and maybe Mr. Gilbert would have testified. He didn't testify to that himself. He didn't. Well, because he was having obvious problems with his mentally unstable counsel throughout the whole course of these proceedings. He had a new lawyer. He didn't testify to that. Did he? Did I ask you that? About no motion for new trial? Yes, he did not. It's not his burden. It's not an actual complaint. It's not because he has some burden. He wants a motion for new trial. He gets convicted. He has no burden. He just gets to say, oh, and by the way, he threatened me to make me not testify. Okay, get up there and say that. Well, I'm not getting up anywhere and say that. All right. Well, that wasn't the only issue that they were going on. They were going on the obvious errors that he did in failing to advance a compulsion defense with Justice Sloan found confounding, but I guess I was able to follow it. He didn't do a jury nullification defense. No. And well, a jury nullification defense, I think what we've seen from the co-defendant is, and this Court has already found, is actually not a proper defense to this type of crime. His only chance, because he's found it that his identity is not an issue, would have been a withdrawal or a compulsion defense because he was there. And he had a compulsion defense that he wanted to be advanced. Another lawyer, maybe Clarence Darrow? No, I don't know. Have you been able? I just said that because I'm. Ms. Ambrose, I'd like to see we have some rebuttal time, so would you conclude? Thank you. Because to hold that because his license to practice law was not technically suspended, Brooks, who flouted our rules of professional conduct repeatedly, and was practicing law when he was actively suffering from delimitating dementia, was qualified to act as counsel, denigrates the concept of effective assistance of counsel, and disparages our legal community. Therefore, this Court should reverse Mr. Gilbert's conviction and remand for a new trial. Thank you. Thank you. Good morning, Your Honor. Once again, my name is Bill Toffin. I am an assistant state's attorney. Your Honor, the Supreme Court rules make it clear that the suspension actually begins upon order of the court, not upon a recommendation of suspension via ARDC. At the time of the trial, the defense counsel was under a recommendation of suspension, but he was still a licensed attorney. He had the right to practice law. He had the right to represent his client. And none of the obligations of suspension kick in until the suspension itself becomes official. So the ---- Was the defendant advised of his lawyer's problems? I'm sorry? Was he advised? Did Mr. Gilbert know about Mr. Brooks' ARDC pending complaint? At the time you went to trial. I'm sorry, Your Honor, I can't hear you. Did Mr. Gilbert know that Mr. Brooks had an ARDC complaint pending when he went to trial? He did not. Okay. The rules say that the obligation to tell, to inform anyone, the court counsel, the clients, does not kick in until the suspension becomes official. After all, the Supreme Court might not impose the suspension. So the basic result of this is what we're dealing with is not the chronic standard but the Strickland standard. Defense counsel's performance at trial must be judged by the Strickland standard. In other words, defendant must point out specific allegations of unreasonable errors and he must point out also that they resulted in prejudice to him. And because of the circumstances of this case, pointing out prejudice would be extremely difficult. The specific allegations that defendant raises of ineffectiveness ---- It depends on the closeness of the proofs on the Strickland. I'm sorry? Doesn't it depend on the closeness of the proof on the ultimate determination? I'm sorry, Your Honor. How close was the evidence? How close was the evidence? It would be difficult to find a case with more overwhelming evidence. Okay? This is a robbery in which the two surviving of the three robbers were found inside the premises. The premises was locked. They tried to escape through a side door with the money. They saw the police. The police, they bolted back inside. They were, the third individual was seen with a firearm. That cost him his life. And as a result, because he was killed during the forcible felony, the other two are automatically chargeable with felony murder. So the evidence cannot be considered even remotely closely balanced. And in the interest of time, Your Honor, I'll ---- Is it agreeable here that the armed robbery conviction being a predicate for the murder, that we should vacate that? Yeah. It is an element of the murder as a result. It must be vacated. Thank you, sir. Thank you. Five minutes. I'm going to be brief. I understand that, and this Court has, again, reviewed this evidence also from the co-defendant, that it's not just that, yes, Mr. Gilbert was found inside, but there was a viable defense that he could offer. And what this Court will be saying is that mentally ill, again, mentally ill, a man who was unfit to practice law, that in this state, that it's fine, that they take up the mantle and represent murder defendants. There's no slippery slope here. There's no danger that we're creating a per se rule that's going to impact and watershed that tons of convictions reverse. This isn't a case when the ARDC, which is essentially our Illinois Supreme Court, finds that a lawyer is unfit to practice law because of his mental deficiencies as well as because of the numerous instances of misconduct, that this Court can find that there has been a per se violation of the Sixth Amendment right to counsel. Alternatively, that we do not have a verdict that's worthy of confidence when we have an attorney who is suffering actively from dementia and had problems with the basic core skills that one needs to represent someone at trial. Therefore, Mr. Gilbert, again, requests that this Court reverse his conviction and remand it for a new trial with a competent attorney. If I may just point something out, when I point out earlier that neither side had put in their brief the colloquy between the trial court and Gilbert when he refused to testify at trial, I didn't mean that as a shout at you. I know you didn't write the brief, and it wouldn't help the defense anyway. That was a shout at Mr. Tucker for having a bad brief. Thank you very much. Thank you. Thank you. Thank you to both counsels. The Court will take this matter under advisement.